OPINION
{¶ 1} Defendant-appellant, Michael S. Pearson, appeals from a judgment of the Jefferson County Court of Common Pleas convicting him of robbery, assault, and theft following a jury trial.
 {¶ 2} On January 17, 2001 at approximately 8:35 p.m., Courtney Feather was leaving Chi-Chi's, her place of employment, at the Fort Steuben Mall in Steubenville, Ohio. While she was getting her keys out to get into her car, she heard a car pull up at a high rate of speed. Two men jumped out of the car, hit her, pushed her to the ground, and stole her purse. The two men hurried back into the car while a third man drove the car away. Miss Feather went back inside Chi-Chi's where her manager contacted the police.
 {¶ 3} Miss Feather recognized one of her assailants as someone she knew from Steubenville High School. She identified him in a Steubenville High School yearbook as Jerrick Dudley and informed the police of such. The police also took her to look at a car to see if she recognized it. Miss Feather identified the car as the one that her robbers drove. The car belonged to Christina Kinest, the girlfriend of Charles Evans. The police questioned both Dudley and Evans. They were subsequently charged with various offenses resulting from the robbery of Miss Feather. They identified appellant as the third man involved in the robbery.
 {¶ 4} On June 6, 2001, the Jefferson County Grand Jury indicted appellant on one count of robbery in violation of R.C. 2911.02(A)(2), one count of assault in violation of R.C. 2903.13(A), and one count of theft in violation of R.C. 2913.02(A)(4). Appellant pled not guilty and proceeded to a jury trial on August 2, 2001. The jury found him guilty of all charges in the indictment. The trial court sentenced appellant the next day to four years imprisonment for the robbery conviction and six months each for the assault and theft convictions to be served concurrently. Appellant filed his timely notice of appeal on August 8, 2001.
 {¶ 5} Appellant raises a single assignment of error, which states:
 {¶ 6} "The jury verdict of guilty for the offenses of robbery, theft and assault was against the manifest weight of the evidence."
 {¶ 7} Appellant argues that the verdict was against the manifest weight of the evidence because plaintiff-appellee, the State of Ohio, did not provide any independent evidence linking him to the robbery other than accomplice testimony. He urges that we must view accomplice testimony with great suspicion and caution. Appellant contends that because many inconsistencies existed among the witnesses' testimony, the testimony of his co-defendants was facilitated by way of plea bargains, and he offered an alibi defense, the verdict was against the manifest weight of the evidence.
 {¶ 8} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 9} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 10} The jury convicted appellant of robbery, assault, and theft. In committing these offenses appellant violated R.C. 2911.02(A)(2),2903.13(A), and 2913.02(A)(4).
 {¶ 11} R.C. 2911.02(A)(2) provides:
 {¶ 12} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 13} "* * *
 {¶ 14} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another."
 {¶ 15} R.C. 2903.13(A) provides:
 {¶ 16} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 17} R.C. 2913.02(A)(4) provides:
 {¶ 18} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 19} "* * *
 {¶ 20} "(4) By threat."
 {¶ 21} The evidence presented at trial supports the jury's finding of guilt on all charges. Such evidence is as follows:
 {¶ 22} Miss Feather testified that she left work at Chi-Chi's at 8:30 or 8:35 and walked out to her car. (Tr. 82-83). When she was about five feet from her car, she heard another car approaching at a high rate of speed. (Tr. 83). She fumbled with her keys while the other car came to a stop at the rear of her car. (Tr. 83). Miss Feather stated there were three black men in the car, one of whom she recognized. (Tr. 83). Two of the men exited the car and the one she recognized pushed her around. (Tr. 83). Miss Feather stated that they stole her purse and pushed her to the ground. (Tr. 83). She stated that she suffered some bumps and bruises on her legs and face. (Tr. 84). She testified that Evans never got out of the car. (Tr. 87). She stated that Dudley was the "main guy" who attacked her and that the other man was behind him and she was not sure what exactly he did. (Tr. 87). Miss Feather testified that she recognized Dudley but at the time could not recall his name. (Tr. 87). She looked through a yearbook later that evening and identified Dudley. (Tr. 87).
 {¶ 23} Dudley and Evans testified as part of their plea bargains. Both admitted their involvement in the robbery and implicated appellant as the third man. Dudley testified as follows. He did not know appellant before the night of the robbery. (Tr. 94). He met appellant that night because they were both Evans' friends. (Tr. 94). That night he and Evans picked up appellant. (Tr. 95). The three men went to the mall and decided they would get some money. (Tr. 96). Evans drove the car, Dudley was in the front seat and appellant was in the back seat. (Tr. 96). They pulled up by a young lady and Dudley and appellant exited the car. (Tr. 96). Dudley stated that appellant pushed the young lady, Dudley grabbed her purse, and they jumped back in the car and drove away. (Tr. 98). He stated appellant looked through the purse and threw it out the window. (Tr. 98).
 {¶ 24} Dudley stated that when the police first questioned him he told them he thought someone named Dave was involved in the robbery because he was scared. (Tr. 100). He testified that person's name was really Michael Pearson, appellant. (Tr. 101). He also testified that after the robbery, Evans dropped him off on Pleasant Heights by a convenience store and dropped appellant off by a gas station on 7th Street. (Tr. 107-108).
 {¶ 25} Dudley's testimony had some discrepancies with Evans' testimony. Evans testified as to the following. On the evening in question, Dudley was at his house playing video games. (T. 119). Appellant arrived at the house. (Tr. 119). Evans knew appellant before this night, as they lived on the same street. (Tr. 120). Evans, Dudley, and appellant decided to go to the mall. (Tr. 119). Evans drove Miss Kinest's car. (Tr. 120). They sat in the parking lot awhile and drove around in front of Chi-Chi's. (Tr. 121). Evans then drove the car behind Miss Feather's car and appellant and Dudley jumped out. (Tr. 122-23). Appellant and Dudley approached Miss Feather. (Tr. 123). Evans heard her scream and when he looked at her, she was already on the ground. (Tr. 123). Appellant and Dudley got back into the car and Evans drove away. (Tr. 124). Evans then dropped appellant off at the gas station on 7th Street and he and Dudley went back to Evans' house. (Tr. 126).
 {¶ 26} Evans also had some inconsistencies between his testimony at trial and his previous statement to the police. He had told the police that they walked around the mall first, but at trial, he testified that they never left the parking lot. (Tr. 134-35). In his statement, Evans told the police Dudley had the purse when he came back to the car and Dudley told him there was a few dollars in it. (Tr. 137). However, at trial Evans stated he did not know who had the purse and Dudley never told him about the money. (Tr. 137). Other inconsistencies existed regarding such details as whether he dropped Dudley off at a convenience store or brought him back to his house, whether he dropped appellant off at a gas station or a housing project, and whether he saw Miss Kinest before he left for the mall. (Tr. 138-40).
 {¶ 27} Miss Kinest testified that on the night in question appellant, Dudley, and Evans were all at her house playing a video game. (Tr. 153-54). She stated that they left in her car and returned later that evening. (Tr. 157-58).
 {¶ 28} Appellant solicited the testimony of two police officers who testified as to what Dudley and Evans had said in their statements to the police. The officers' testimony brought out the previously mentioned inconsistencies.
 {¶ 29} Even though the witnesses' testimony has some discrepancies, the key facts are consistent throughout their testimony. Dudley, Evans, and Miss Kinest placed appellant with the two other men on January 17, 2001. Both Dudley and Evans stated that appellant went to the mall with them on the evening in question. They both identified appellant as the man who participated in the robbery with them. Both stated that appellant and Dudley exited the car while Evans remained in the driver's seat. Both testified that Miss Feather ended up on the ground and that they stole her purse.
 {¶ 30} Evans testified that he did not see who actually knocked Miss Feather down or who took her purse. Miss Feather testified Dudley was the one who hit her and took her purse. Dudley testified that appellant hit her and he, Dudley, took her purse. Which one of the men took the purse and which one knocked Miss Feather to the ground is irrelevant. Both men robbed Miss Feather. Both can be charged and convicted with robbery, assault, and theft because they acted in complicity with one another. See State v. Herring (2002),94 Ohio St.3d 246, 251; State v. Agee (1999) 133 Ohio App.3d 441, 446; R.C. 2923.03(F).
 {¶ 31} Appellant also attempted to provide an alibi. He called his mother's fiancé, David Wallace. Wallace testified he and appellant's mother were at appellant's house on the night in question. (Tr. 194). Wallace stated that he, appellant's mother, and appellant spent the evening drinking beer and playing video games until 10:30 or 11:00 p.m. (Tr. 194-95). When questioned on cross-examination how he remembered he was with appellant on January 17 drinking beer and playing video games, Wallace replied that was what he did every night. (Tr. 200). He stated it was his normal routine to go to appellant's house with appellant's mother every night. (Tr. 202). He further stated that nothing in particular distinguished January 17 from any other day. (Tr. 202-203). Wallace could not remember whether he went to work that day. (Tr. 207). He also changed his testimony, first testifying that appellant accompanied him to buy beer and later testifying he could not remember whether appellant went with him. (Tr. 196, 204).
 {¶ 32} Wallace's testimony appears unreliable at best. He based his testimony that he was at appellant's house drinking and playing video games on January 17 on the basis that it was what he did almost every night. When asked what he was doing on January 16, the night before, he responded, "Probably the same thing I was doing the 17th and the 18th. Like I said, it was a nightly ritual." (Tr. 200). It appears that Wallace had no independent recollection of January 17, 2001, but instead assumed he and appellant's mother were at appellant's house because that is what they did almost every night. Furthermore, witness credibility is best left to the trier of fact who has the best opportunity to observe and evaluate the witnesses' demeanor and voice inflections. State v. Kyser
(Aug. 10, 2000), 7th Dist No. 98-CA-144; Seasons Coal v. Cleveland
(1984), 10 Ohio St.3d 77, 80; DeHass, 10 Ohio St.2d at 231. Obviously, the jury did not believe Wallace's testimony.
 {¶ 33} Inconsistencies existed among the witnesses' testimony. However, inconsistencies among accounts of an event go to the credibility of the witnesses. State v. Fullerman, 7th Dist. No. 99-CA-314,2001-Ohio-3969; DeHass, 10 Ohio St.2d 230. It is well established that determining the credibility of witnesses is primarily the responsibility of the trier of fact. Id. The trier of fact is free to believe some, all, or none of the testimony of each of the witnesses. State v.Gaskill, 7th Dist. No. 00-CO-17, 2001-Ohio-3369. Furthermore, the trier of fact is free to choose among reasonable constructions of evidence.State v. Brown (Jan. 30, 2001), 7th Dist. No. 96-CA-56.
 {¶ 34} Based on the foregoing, competent, credible evidence existed from which the jury could have found appellant guilty on all three counts. Accordingly, appellant's sole assignment of error is without merit.
 {¶ 35} For the reasons stated above, the decision of the trial court is hereby affirmed.
Judgment affirmed.
Vukovich and DeGenaro, JJ., concur.